UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
THOMAS FALCIANO,

                Plaintiff,                  **MEMORANDUM AND ORDER**

   -against-                                   Case No. 18-CV-06853 (FB)

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.
--------------------------------------------------x

Appearances:

*For the Plaintiff*:                            *For the Defendant*:
FRANSESCA ZELTMANN             GAIL A. MATTHEWS
Persaud + Zeltmann                  United States Attorney's Office
675 Broadway                             Eastern District of New York
Massapequa, NY 11758             271 Cadman Plaza East
                                                 Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

      Thomas Peter Falciano ("Falciano") appeals the Commissioner of Social Security's ("Commissioner") final decision denying his application for disability insurance benefits ("DIB"). Both Falciano and the Commissioner move for judgment on the pleadings. Upon review, the Court finds that the Commissioner failed to consider relevant record evidence, denies both parties' motions and remands for further proceedings consistent with this Memorandum and Order.

1

**I.**

Falciano (born February 5, 1954) applied for DIB in February 2015, alleging injuries to his neck, back, and right knee, and sciatica in his right hip and foot. Disability Determination Services ("DDS") denied his application, and Falciano sought and participated in a hearing before Administrative Law Judge ("ALJ") David Tobias. Applying the five-step evaluation process prescribed in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4),[1] ALJ Tobias rendered a decision in August 2017, once again denying Falciano's DIB application ("Decision").

In relevant part, ALJ Tobias determined that Falciano had severe impairments in his right knee and lumbar spine but retained a residual functional capacity ("RFC") to perform "medium work." Under 20 CFR 404.1567(c), "medium" work is any work that "involves lifting . . . 50 pounds at a time[,] with frequent lifting or carrying of objects weighing up to 25 pounds." Social Security Regulation 83-10 further defines the "full range of medium work" as "usually requir[ing] frequent

---

[1] The Commissioner must determine "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *McIntyre v. Colvin*, 748 F.3d 146, 150 (2d Cir. 2014). The burden of proof is on the claimant but shifts to the Commissioner at the fifth step. *Id.*

bending-stooping," "considerable lifting," and "[f]lexibility of the knees as well as the torso." SSR 83-10 (S.S.A. 1983). Based upon that RFC, ALJ Tobias concluded that Falciano was able to perform his past work as a "recycling supervisor"[2] and so did not qualify for disability benefits. The Decision became final in 2018 when the Appeals Council summarily denied Falciano's petition for review.

Falciano now appeals, challenging the RFC determination as unsupported by substantial record evidence. The Court agrees and remands for additional consideration of the record and/or development thereof, as necessary.

## II.

The Court may set aside a final determination that is "based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole." *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971); it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). An ALJ "need not address every shred of evidence in the administrative record," *Wright v. Berryhill*, No. 3:17-cv-00501, 2018 WL 3993442, at *5 (D. Conn. Aug. 21, 2018),

---

[2] As a "recycling supervisor," Falciano assigned waste-disposal personnel to routes, answered customer complaints, and ensured waste disposal trucks were maintained. *See* Dictionary of Occupational Titles, manager solid waste disposal, DOT 184.167-078.

3

but may not ignore "relevant and probative evidence which is available," *Lopez v. Sec'y of Dep't of Health & Human Servs.*, 728 F.2d 148, 150–51 (2d Cir. 1984). The Court finds that the ALJ's assessment of Falciano's RFC deficient as it failed to properly consider relevant medical and non-medical evidence.

* * *

Falciano sought treatment for his back pain as early as 1992, and for his right knee starting in 2014. Treatment records from Dr. Jay Riess, DC—Falciano's long-time chiropractor—show a history of back injuries from "work-related" incidents, including injuries in 1997, 1998, 1999, and 2003. According to an MRI exam performed in 1999, Falciano has disc herniation, disc "narrowing," and disc degeneration throughout his lumbar spine. In 2015, Dr. Riess noted that Falciano had "permanent cervical and lumbar dysfunctions," that his back pain was "chronic and [in] deteriorating condition," and that the "[p]rognosis [was] poor for a full functional recovery." At the time Dr. Riess recommended that Falciano lift no more than 15 pounds and avoid work that involved bending, stooping, or kneeling. In 2017, Dr. Riess further diagnosed Falciano with degenerative cervical disc syndrome and paraspinal myofascitis (chronic pain), and recommended Falciano lift no more than 10 pounds.

Dr. Andrea Pollack, the Commissioner's consultative physician, also observed "moderate restriction[s]" in Falciano's ability to bend or kneel, and lift or carry weight.

Tae Hyun Kim, an acupuncturist who treated Falciano in 2014 and 2015, reported that "[b]ending forward would create" a "sharp shooting pain" so severe that Falciano struggled to put on socks.

Orthopedist Dr. Michael Schwartz, MD, treated Falciano for right knee pain between 2014 and 2016. Dr. Schwartz diagnosed Falciano with a degenerative tear in his medial meniscus, administered cortisone injections to his knee, and prescribed physical therapy. In 2016, after Falciano continued to report pain even with physical therapy, Dr. Schwartz recommended arthroscopic surgery.

The Decision ignores or mischaracterizes much of that record. First, it dismisses the 1999 MRI of Falciano's spine on the basis that "[Falciano] was able to work years after this testing," but then fails to address the 2003 injury or 2015 prognosis that Falciano's condition was "chronic and deteriorating." Second, it states that Falciano's "neck and shoulder pain were much more relieved" after acupuncture treatment, but omits how (if at all) the acupuncture treatment affected Falciano's back or his knee. Third, it incorrectly states that Falciano "declined arthroscopic surgery" even though Dr. Schwartz's treatment records clearly state Falciano "consented" to the procedure. Finally, the Decision fails to explain why

5

the exertional limitations identified by Dr. Riess (avoid bending, stooping, kneeling, and lifting more than 15 pounds) and Dr. Pollack ("restrictions" in bending, kneeling, lifting, and carrying weight) were jettisoned in favor of an RFC that corresponds with lifting 50 pounds and "usually requires frequent bending-stooping." An ALJ may not "simply pick and choose . . . only such evidence that supports [his or her] determination, without affording consideration to evidence supporting the plaintiff's claims." *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004).

In addition, "[b]ecause an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010). ALJ Tobias based the RFC assessment on little more than his own interpretation of Falciano's testimony, explaining that:

> [Falciano's] reported daily activities are greater than one might expect, given his allegations of total disability. For example, [Falciano] stated that he is able to shop in stores 1-2 times a week for about 45 minutes and "tinker around" in his shop fixing fishing poles and reels. He can prepare simple meals and perform light laundry and housekeeping. He is able to drive, take public transportation, and goes out alone and attends church. He states that sometimes[,] once a month or maybe weekly[,] he goes fishing, plays cards and goes to the library. . . . His activities of daily living are inconsistent with his complaints.

Falciano's testimony is not a "properly submitted medical opinion," and the ALJ does not explain how testimony regarding "light laundry" and attending church bears upon the issue of Falciano's RFC or ability to work in waste disposal.[3] *Cf. Balsamo v. Chater*, 142 F.3d 75, 81–82 (2d Cir. 1998) ("[W]hen a disabled person gamely chooses to endure pain in order to pursue important goals, such as attending church . . . it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working." (internal quotations omitted)).

Also, Dr. Schwartz, Dr. Riess, Dr. Pollack, and Mr. Kim all observed physical impairments in Falciano that inhibit his working at a "medium" RFC level. Notably, the ALJ mistook Dr. Schwartz for a physical therapist rather than a medical doctor whose opinion would be entitled to "controlling weight" under 20 C.F.R. § 404.1527(c)(2).[4] Dr. Riess—the chiropractor—treated Falciano for over 20 years,

---

[3] Falciano testified that as a "recycling supervisor" he picked-up recyclable waste from residential and commercial sites; was "in the field 95% of the time;" "was probably in and out of [his] truck 20 to 30 times a day;" and that he had to lift garbage bins weighing "50 pounds or more" as often as "four or five times a day, if not more."

[4] In addition to Dr. Michael Schwartz, MD, Falciano received treatment from physical therapist, Dr. William Schwartz, DPT. The ALJ apparently confused the qualifications of each "Schwartz." *Compare* Decision at 6 ("On February 26, 2014 the claimant presented to Michael Schwartz, P.T., for complaints of right knee pain. . . . Mr. Schwartiz's [sic] impression was right knee, degenerative meniscal tear. The claimant was treated with a cortisone injection. (Ex. 1F)" *with* Ex. 1F, Pro Health Radiology Report, Michael C. Schwartz, MD, Feb. 26, 2014.

longer than any other medical or nonmedical source in the record, and so was well-positioned to assess the severity of Falciano's spinal impairments. *See Ilarda v. Chater*, 1996 WL 389366, at *12 (E.D.N.Y. July 8, 1996) ("[A] treating chiropractor's opinion regarding the diagnosis and degree of an impairment may be given significant weight."); *see also* 20 C.F.R. § 404.1527 (the "[l]ength of the treatment relationship and the frequency of examination" entitle non-medical opinions to "more weight"). The opinion of Mr. Kim—the acupuncturist—similarly constitutes "relevant" record evidence. 20 C.F.R. § 404.1545 (an ALJ must consider "all of the relevant medical and other evidence" when assessing a claimant's RFC); *see also id.* at § 404.1527(c)(4) ("Generally, the more consistent a[n] . . . opinion is with the record as a whole, the more weight we will give to that opinion."). Indeed, Falciano's "willingness to undergo a wide range of treatments, including . . . injections, acupuncture, and chiropractic intervention" is "weighty evidence of [a] disability." *Cherico v. Colvin*, 2014 WL 3939036, at *35 (S.D.N.Y. Aug. 7, 2014).

Finally, this is not a case where the ALJ favored one medical source opinion over another. Rather, the ALJ simply favored his own opinion over the opinions of three doctors and Falciano's treating acupuncturist. An ALJ "is free . . . to choose between properly submitted medical opinions, [but] he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *McBrayer v. Sec'y of Dep't of Health & Human Servs.*, 712 F.2d 795, 799 (2d

8

Cir.1983). If the ALJ was unsatisfied with the available medical opinions, or believed there to be evidentiary gaps, it was his duty to develop the record further. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2010) ("The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings."). Because ALJ Tobias "improperly substituted his own opinion for that of a physician," the Court finds the RFC determination legally deficient and unsupported by substantial evidence. *Hilsdorf*, 724 F. Supp. 2d at 347.

### III.

For the foregoing reasons, both motions for judgment on the pleadings are denied, and the case is remanded for further proceedings consistent with this Memorandum and Order.

**SO ORDERED**.

                                                 /S/ Frederic Block
                                                 FREDERIC BLOCK
                                                 Senior United States District Judge

Brooklyn, New York
March 27, 2020